IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

DAVID KEELEY,

    Petitioner,

    v.

WARDEN, BELMONT
CORRECTIONAL INSTITUTION,

    Respondent.

CASE NO. 2:15-CV-00972
JUDGE GREGORY L. FROST
MAGISTRATE JUDGE KING

## OPINION AND ORDER

Petitioner, a state prisoner, brings the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  This matter is before the Court on the Petition, Respondent's Return of Writ, Petitioner's Reply, and the exhibits of the parties.

For the reasons that follow, this action is subject to dismissal as unexhausted.  Petitioner may notify the Court within fourteen (14) days if he wishes to delete his unexhausted claims and proceed on his remaining exhausted claims.  The failure to do so will result in dismissal of this action.

### Facts and Procedural History

The Ohio Fourth District Court of Appeals summarized the facts and procedural history of the case as follows:

> Appellant and his family moved from England to the United States when his employer transferred him to a position.FN2 He, his wife and daughters eventually settled in Marietta in 1996. They became close friends with the Davis family, whose backyard adjoins their own. R.D., the youngest child of the Davis family, was approximately ten or eleven years old when appellant moved to the area. Although an adult at the time of the events that resulted in the offenses, R.D. suffers from mental retardation and functions at the cognitive level of a minor.FN3

Around mid-April 2010, R.D. visited appellant's home to help paint. Afterward, appellant and R.D. engaged in some degree of sexual contact. Several weeks later, appellant contacted R.D. to see if she would help him work on his motorcycles.FN4 R.D. went to appellant's home and, once again when the work was completed, the two engaged in sexual contact.FN5

After R.D. returned home that particular evening, she was unusually quiet. When R.D.'s mother asked if anything was wrong, she admitted that she and appellant had engaged in sexual activity. Jane Davis, R.D.'s mother, and her husband took her to the hospital and medical personnel used a "rape kit" to collect genetic material on, and inside, her body.

The following morning, authorities prompted Davis to engage in a "controlled" cell-phone call with appellant. Appellant initially denied any sexual contact with R.D., but after further questioning, admitted to Davis that he had "tried to have sex with [R.D.] but couldn't actually do the job" because of certain medical problems he was experiencing. Appellant also intimated to Davis that her daughter had a "crush" on him and that she initiated the sexual contact. Appellant also stated to Davis that he "touched her [daughter] once before" when R.D. came over to help him paint. Appellant promised Davis that he would contact her again to discuss the matter after he returned home.FN6

After appellant returned home, and before he could contact Davis, several Washington County Sheriff's Deputies interviewed him. Again, appellant admitted that he engaged in sexual activity with R.D., although he suggested that R.D. initiated the sexual conduct. At the conclusion of the interview the authorities arrested appellant.

Subsequently, the Washington County Grand Jury returned an indictment that charged appellant with two counts of rape and three counts of GSI. Appellant pled not guilty and the matter proceeded to a jury trial.

At trial, no question existed that sexual contact had, in fact, occurred. Appellant acknowledged that some degree of contact had occurred. R.D. also described some of the acts, and she admitted that she did not tell appellant to stop. The trial focused primarily on two issues. The first was whether vaginal penetration occurred. R.D. answered "yes" when asked if appellant had "put his fingers in [her] front bottom[.]" Likewise, she responded affirmatively

2

when asked if appellant put "his penis inside [her] front bottom[.]" Washington County Sheriff's Department Detective Mark Johnson also produced a tape recording of his interview with appellant. In that recording, appellant did not admit that he digitally penetrated R.D., but he conceded that it may have occurred. Appellant, however, emphatically denied penile penetration and testified that because he suffered from erectile dysfunction, he was incapable of doing so. To confirm his claim, the defense offered corroborating testimony from appellant's physician.

Lauren Dutton, a Marietta Memorial Hospital nurse, testified that she examined R.D. the night of the second incident and found a "white milky fluid" in the area of her cervix. Sarah Glass, a forensic scientist at the Ohio Bureau of Criminal Investigation (BCI), testified that the swabs from the rape kit tested positive for semen. Emily Draper, also a BCI scientist, testified that after she tested the genetic material from R.D.'s swabs and compared it to the genetic material on "buccal swabs" taken from appellant's mouth, appellant could not be "excluded as the source of the semen on the vaginal swabs." FN7

The second major issue at trial was R.D.'s mental and emotional age, and whether a "substantial impairment" existed to consenting to sexual activity. Although various prosecution witnesses offered different opinions, all agreed that R.D. behaved at a level below that of a 10 year old child. Appellant countered, however, that R.D. behaved that way only when she was near her mother. Away from her mother, appellant maintained, R.D. acted like a 16 to 18 year old. Harriet Metcalfe, a friend of the Keeley family, testified that she had previously met R.D. and thought that she acted like a 16 year-old.

After hearing the evidence, the jury returned guilty verdicts on all charges. The trial court sentenced appellant to serve six years imprisonment on each of the rape counts and twelve months on two of the GSI counts. The court found that the other GSI count merged into the rape charges, ordered that the sentences for rape and one GSI count be served concurrently, and ordered that the second GSI sentence be served consecutively to the three prior sentences for an aggregate seven year prison term. This appeal followed.

FN2:  Appellant testified that his wife and children have become U.S. citizens. It appears from the sentencing hearing transcript, however, and the discussion of possible deportation once appellant is released from prison, that he has not been naturalized.

3

>   FN3: The precise age level at which R.D. functions was an issue at trial. Prosecution witnesses testified that her age level is less than ten years old, whereas defense witnesses testified that she behaved like someone sixteen to eighteen years of age.
>
>   FN4: Appellant races motorcycles in addition to his regular job. The uncontroverted evidence is that appellant often offered R.D. spending money to come to his house to help with chores.
>
>   FN5: No allegation was made, nor evidence introduced, to indicate that the encounters involved the use of force.
>
>   FN6: This cell phone call occurred the morning after Davis had spent all night at the hospital with her daughter. Appellant was apparently en route to a motorcycle race.
>
>   FN7: The witness explained that it is not the policy of BCI to make "identity statements." That is to say, the witness would not opine that the genetic material taken from the vaginal swab matched the genetic material taken from appellant. She did assure the jury, however, that she "would have to test approximately 3.6 quadrillion other people, to find somebody else who might be the source of the semen."

*State v. Keeley*, No. 11CA5, 2012 WL 3194355, at *1-2 (Ohio App. 4th Dist. Aug. 2, 2012).

Appellant assigned the following errors for review on direct appeal:

>   FIRST ASSIGNMENT OF ERROR:
>
>   "THE TRIAL COURT VIOLATED DAVID P. KEELEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR THEFT [sic] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."[1]
>
>   SECOND ASSIGNMENT OF ERROR:
>
>   "THE TRIAL COURT ERRED IN ADMITTING LAY WITNESS OPINION TESTIMONY THAT WAS UNRELATED TO THAT WITNESS'S PERCEPTIONS AND CALLED FOR SPECIALIZED KNOWLEDGE."

---

[1] Petitioner actually asserted that his rape conviction was against the manifest weight of the evidence. The reference to "theft" was apparently a typographical error. *See State v. Keeley*, 2012 WL 3194355, at *3 n.8.

> THIRD ASSIGNMENT OF ERROR:
>
> "THE STATE'S MISCONDUCT, DURING ITS CLOSING ARGUMENT, DENIED MR. KEELEY THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."
>
> FOURTH ASSIGNMENT OF ERROR:
>
> "TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE STATE'S IMPROPER STATEMENTS DURING ITS CLOSING ARGUMENT."

*Id*. at *1.[2] On August 2, 2012, the appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file an appeal. On November 28, 2012, the appellate court denied Petitioner's application for reconsideration as untimely and without merit. *Entry on Application for Reconsideration* (ECF No. 7-1, PageID# 325.)

On September 13, 2012, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B). (PageID# 328.) Petitioner asserted that he had been denied the effective assistance of appellate counsel when his attorney failed to raise on appeal the following claims: that the trial court denied him a fair trial when it failed to clear up jury confusion during deliberations; improper admission of expert testimony; prosecutorial misconduct; that his convictions were against the manifest weight of the evidence and the evidence was constitutionally insufficient to sustain his convictions; the ineffective assistance of trial counsel; denial of due process in discovery; and that the State's use of electronic surveillance violated the

---

[2] Petitioner filed a Motion for the Ability to File a Supplemental Brief Pro Se for Appeal. (ECF No. 7-1, PageID# 260.) A state court magistrate denied that motion. (PageID# 264.) Petitioner filed an appeal with the Ohio Supreme Court. (PageID# 265.) On March 21, 2012, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. (PageID# 281.)

Fourth Amendment. (PageID# 328-342.) On December 13, 2012, the appellate court denied Petitioner's Rule 26(B) application. (PageID# 351.)

On January 9, 2013, Petitioner filed a notice of appeal from the appellate court's November 28, 2012, and December 13, 2012, orders denying his motion for reconsideration and Rule 26(B) application. (PageID# 360.) On March 27, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4). (PageID# 408.)

Petitioner also pursued post conviction relief.

> On December 5, 2011, while his first appeal of right was pending, appellant filed a petition for postconviction relief with the trial court. Although the court dismissed the petition on *res judicata* grounds, we reversed the judgment and remanded the case for further proceedings. In so doing, a majority of this Court held that res judicata did not bar arguments from being raised on post-conviction relief if an appeal of right was pending. *See State v. Keeley*, 2013–Ohio–474, 989 N.E.2d 80 (4th Dist.) (*Keeley II*). The Ohio Supreme Court denied an appeal from that decision. *See State v. Keeley*, 135 Ohio St.3d 1460, 2013–Ohio–2285, 988 N.E.2d 579 (Keeley IIA ).
>
> On August 8, 2013, after our reversal and remand of *Keeley II*, the trial court entered judgment and found that appellant "failed to show that he is entitled to post conviction relief." This appeal followed.

*State v. Keeley,* No. 13CA34, 2014 WL 800488, at *1 (Ohio App. 4th Dist. Feb. 21, 2014).

Appellant assigned the following errors for review in that appeal:

> FIRST ASSIGNMENT OF ERROR:
>
> "THE TRIAL COURT VIOLATED THE PETITIONERS [sic] RIGHTS TO DUE PROCESS OF THE LAW WHEN IT FAILED TO CLEAR WAY [sic] THE JURIES [sic] CONFUSION AND PLAIN ERROR FOR FAILING TO CLARIFY THEIR CONFUSION."

SECOND ASSIGNMENT OF ERROR:

"THE STATES [sic] USE OF 'EXPERT' TESTIMONY PREJUDICED THE APPELLANT AND ADDED TO THE JURIES [sic] CONFUSION. THE USE OF THESE TESTIMONIES CAUSED THE JURY TO LOSE ITS WAY. THE TESTIMONIES WERE NOT VALID AGAINST PROVEN SCIENTIFIC AND PSYCHOLOGICAL METHODOLOGY. PROSECUTORIAL MISCONDUCT AND PLAIN ERROR SHOULD APPLY."

THIRD ASSIGNMENT OF ERROR1:

"THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION UNDER THE STANDARDS OF 'SUFFICIENCY OF EVIDENCE' AND 'MANIFEST WEIGHT OF THE EVIDENCE'."

FOURTH ASSIGNMENT OF ERROR:

"THE PROSECUTOR'S MISCONDUCT DEMONSTRATED UNPROFESSIONALISM AND VINDICTIVENESS [AND] DENIED THE APPELLANT [sic] RIGHTS TO A FAIR AND IMPARTIAL TRIAL. HIS ACTIONS INSIDE AND OUTSIDE THE COURTROOM DEMONSTRATE THAT THIS HAD BECOME A PERSONAL VENDETTA AGAINST THE APPELLANT AND HIS FAMILY."

FIFTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL FOR THE REASONS LISTED BELOW WHICH VIOLATED THE APPELLANTS [sic] RIGHTS TO A FAIR AND IMPARTIAL TRIAL AGAINST THE FIFTH, SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."

SIXTH ASSIGNMENT OF ERROR:

"THE STATES [sic] USE OF ELECTRONIC SURVEILLANCE VIOLATED THE APPELLANTS [sic] FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTIONAL RIGHTS [sic] AND ALSO VIOLATED TITLE iii STATUTE [sic]."

*Id*.  On February 21, 2014, the appellate court affirmed the trial court's judgment dismissing the post conviction petition, holding that Petitioner's claims were barred under Ohio's doctrine of *res judicata*.  *Id.*  On January 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.R.Prac.R. 7.08(B)(4).  *State v. Keeley*, 141 Ohio St.3d 1455 (Ohio 2015).  On March 25, 2015, the Ohio Supreme Court denied Petitioner's motion for reconsideration.  *State v. Keeley*, 142 Ohio St.3d 1412 (Ohio 2015).

On March 19, 2015, Petitioner filed the instant petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He asserts that the trial court denied him his right to due process when it "failed to clear away the jury['s] confusion" during deliberations (claim one); that the State's use of expert testimony prejudiced him, added to the jury's confusion, and amounted to prosecutorial misconduct and a denial of due process (claim two); that his convictions are against the manifest weight of the evidence and that the evidence is constitutionally insufficient to sustain his convictions (claim three); that he was denied a fair trial based on prosecutorial misconduct (claim four); that he was denied the effective assistance of trial counsel (claim five); that he was denied his right to due process and discovery in violation of Ohio law (claim six); that the State's use of electronic surveillance violated the Fourth Amendment and "Title iii statute" (claim seven); and that he was prejudiced by incorrect statements to the media "which then influenced the populace to an assumption of guilt before trial" (claim eight).  It is the position of the Respondent that Petitioner's claims are procedurally defaulted and without merit.

**Exhaustion**

Petitioner properly presented certain claims that he now raises in these proceedings on direct appeal, *i.e*., claims of prosecutorial misconduct, the improper admission of lay witness opinion testimony, and the denial of the effective assistance of counsel.  *See State v. Keeley*,

2012 WL 3194355, at *1. However, Petitioner never filed an appeal of the appellate court's August 2, 2012, decision denying his appeal to the Ohio Supreme Court.[3] Further, Petitioner may now still pursue a delayed appeal pursuant to Ohio S.Ct.Prac.R. 7.01(A)(4). Therefore, this action remains unexhausted.

Before a federal habeas court may grant relief, a state prisoner must exhaust his available remedies in the state courts. 28 U.S.C. § 2254(b)(1); *Castille v. Peoples*, 489 U.S. 346, 349 (1989); *Silverburg v. Evitts*, 993 F.2d 124, 126 (6th Cir. 1993). If a habeas petitioner has the right under state law to raise a claim by any available procedure, he has not exhausted that claim. 28 U.S.C. § 2254(b), (c). Moreover, a constitutional claim for relief must be presented to the state's highest court in order to satisfy the exhaustion requirement. *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir.1990). In Ohio, this exhaustion requirement includes direct and delayed appeals to the Ohio Court of Appeals and the Ohio Supreme Court. *Mackey v. Koloski*, 413 F.2d 1019 (6th Cir. 1969); *Allen v. Perini*, 26 Ohio Misc. 149 (6th Cir. 1970). Because Petitioner did not pursue either a direct or delayed appeal to the Ohio Supreme Court, at least some of Petitioner's claims remain unexhausted.

Federal courts may not entertain "mixed petitions," *i.e.,* petitions that present both exhausted and unexhausted claims. *Rose v. Lundy*, 455 U.S. 509 (1982). However, federal courts have the discretion to stay a mixed petition in order to permit the petitioner to present his unexhausted claims to the state court, and then to return to federal court for review of all, now exhausted, claims. *Rhines v. Weber*, 544 U.S. 269 (2005). However, stays under these circumstances should be only sparingly used; stays are not appropriate, for example, when the unexhausted grounds are plainly meritless. *Id.* at 278. A petitioner seeking a stay to permit

---

[3] On January 9, 2013, Petitioner filed a *Notice of Appeal* with the Ohio Supreme Court of the appellate court's November 28, 2012, denial of his motion for reconsideration, and the December 13, 2012, denial of his Rule 26(B) application. (ECF No. 7-1, PageID# 360-61.)

exhaustion of an unexhausted claim must demonstrate both good cause for having failed to exhaust his state court remedies and a potentially meritorious claim. *Id.* at 277–78.

The record reveals that Petitioner cannot establish good cause for having failed to pursue a delayed appeal in the Ohio Supreme Court. Further, his claims are not potentially meritorious because it appears from the record that they are likely barred from review by the Ohio Supreme Court on the basis of untimeliness. A stay of proceedings is unwarranted because a motion for delayed appeal would have little, if any, likelihood of success. *Williams v. Thaler*, 602 F.3d 291 (5th Cir. 2010) (When a petitioner is "procedurally barred from raising [his] claims in state court," his "unexhausted claims are plainly meritless.")

Therefore, this action is subject to dismissal as unexhausted. Petitioner may notify the Court within fourteen (14) days if he wishes to delete his unexhausted claims and proceed on his remaining exhausted claims. His failure to do so will result in dismissal of this action.

**IT IS SO ORDERED.**

    /s/ GREGORY L. FROST
GREGORY L FROST
United States District Judge