## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**DAVID KEELEY,**

      **Petitioner,**

      **v.**

**WARDEN, BELMONT**
**CORRECTIONAL INSTITUTION,**

      **Respondent.**

**Civ. No. 2:15-cv-00972**
**Judge Marbley**
**Magistrate Judge King**

## REPORT AND RECOMMENDATION

Petitioner, a state prisoner, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The action was subject to dismissal as unexhausted. *See Opinion and Order* (ECF No. 11). However, Petitioner has now filed an *Amended Petition* indicating that he wishes to delete the following, unexhausted, claims from his habeas corpus petition: 1) prosecutorial misconduct during closing argument; 2) the denial of the effective assistance of counsel based on his attorney's failure to object to the prosecutor's statements during closing arguments; and 3) lay witness opinion testimony. *Response and Amended Petition* (ECF No. 13, PageID# 13). Petitioner wishes to proceed on his remaining claims, which are exhausted. *See id.; Amended Petition* (ECF No. 14).

This matter therefore is before the Court on the *Amended Petition*, Respondent's *Return of Writ* (ECF No. 7) and *Supplemental Answer* (ECF No. 16), Petitioner's *Petitioner's Traverse to the Respondents* [sic] *Answer/Return of Writ,* (ECF No. 10) and *Reply* (ECF No. 17), and the exhibits of the parties. For the reasons that follow, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED**.

**Facts and Procedural History**

The Ohio Fourth District Court of Appeals summarized the facts and procedural history
of the case as follows:

> Appellant and his family moved from England to the United States
> when his employer transferred him to a position.FN2 He, his wife
> and daughters eventually settled in Marietta in 1996. They became
> close friends with the Davis family, whose backyard adjoins their
> own. R.D., the youngest child of the Davis family, was
> approximately ten or eleven years old when appellant moved to the
> area. Although an adult at the time of the events that resulted in the
> offenses, R.D. suffers from mental retardation and functions at the
> cognitive level of a minor.FN3
>
> Around mid-April 2010, R.D. visited appellant's home to help
> paint. Afterward, appellant and R.D. engaged in some degree of
> sexual contact. Several weeks later, appellant contacted R.D. to see
> if she would help him work on his motorcycles.FN4 R.D. went to
> appellant's home and, once again when the work was completed,
> the two engaged in sexual contact.FN5
>
> After R.D. returned home that particular evening, she was
> unusually quiet. When R.D.'s mother asked if anything was wrong,
> she admitted that she and appellant had engaged in sexual activity.
> Jane Davis, R.D.'s mother, and her husband took her to the hospital
> and medical personnel used a "rape kit" to collect genetic material
> on, and inside, her body.
>
> The following morning, authorities prompted Davis to engage in a
> "controlled" cell-phone call with appellant. Appellant initially
> denied any sexual contact with R.D., but after further questioning,
> admitted to Davis that he had "tried to have sex with [R.D.] but
> couldn't actually do the job" because of certain medical problems
> he was experiencing. Appellant also intimated to Davis that her
> daughter had a "crush" on him and that she initiated the sexual
> contact. Appellant also stated to Davis that he "touched her
> [daughter] once before" when R.D. came over to help him paint.
> Appellant promised Davis that he would contact her again to
> discuss the matter after he returned home.FN6
>
> After appellant returned home, and before he could contact Davis,
> several Washington County Sheriff's Deputies interviewed him.

2

Again, appellant admitted that he engaged in sexual activity with R.D., although he suggested that R.D. initiated the sexual conduct. At the conclusion of the interview the authorities arrested appellant.

Subsequently, the Washington County Grand Jury returned an indictment that charged appellant with two counts of rape and three counts of GSI. Appellant pled not guilty and the matter proceeded to a jury trial.

At trial, no question existed that sexual contact had, in fact, occurred. Appellant acknowledged that some degree of contact had occurred. R.D. also described some of the acts, and she admitted that she did not tell appellant to stop. The trial focused primarily on two issues. The first was whether vaginal penetration occurred. R.D. answered "yes" when asked if appellant had "put his fingers in [her] front bottom[.]" Likewise, she responded affirmatively when asked if appellant put "his penis inside [her] front bottom[.]" Washington County Sheriff's Department Detective Mark Johnson also produced a tape recording of his interview with appellant. In that recording, appellant did not admit that he digitally penetrated R.D., but he conceded that it may have occurred. Appellant, however, emphatically denied penile penetration and testified that because he suffered from erectile dysfunction, he was incapable of doing so. To confirm his claim, the defense offered corroborating testimony from appellant's physician.

Lauren Dutton, a Marietta Memorial Hospital nurse, testified that she examined R.D. the night of the second incident and found a "white milky fluid" in the area of her cervix. Sarah Glass, a forensic scientist at the Ohio Bureau of Criminal Investigation (BCI), testified that the swabs from the rape kit tested positive for semen. Emily Draper, also a BCI scientist, testified that after she tested the genetic material from R.D.'s swabs and compared it to the genetic material on "buccal swabs" taken from appellant's mouth, appellant could not be "excluded as the source of the semen on the vaginal swabs." FN7

The second major issue at trial was R.D.'s mental and emotional age, and whether a "substantial impairment" existed to consenting to sexual activity. Although various prosecution witnesses offered different opinions, all agreed that R.D. behaved at a level below that of a 10 year old child. Appellant countered, however, that R.D. behaved that way only when she was near her mother. Away from her mother, appellant maintained, R.D. acted like a 16 to 18 year old. Harriet Metcalfe, a friend of the Keeley family, testified that

she had previously met R.D. and thought that she acted like a 16 year-old.

After hearing the evidence, the jury returned guilty verdicts on all charges. The trial court sentenced appellant to serve six years imprisonment on each of the rape counts and twelve months on two of the GSI counts. The court found that the other GSI count merged into the rape charges, ordered that the sentences for rape and one GSI count be served concurrently, and ordered that the second GSI sentence be served consecutively to the three prior sentences for an aggregate seven year prison term. This appeal followed.

FN2: Appellant testified that his wife and children have become U.S. citizens. It appears from the sentencing hearing transcript, however, and the discussion of possible deportation once appellant is released from prison, that he has not been naturalized.

FN3: The precise age level at which R.D. functions was an issue at trial. Prosecution witnesses testified that her age level is less than ten years old, whereas defense witnesses testified that she behaved like someone sixteen to eighteen years of age.

FN4: Appellant races motorcycles in addition to his regular job. The uncontroverted evidence is that appellant often offered R.D. spending money to come to his house to help with chores.

FN5: No allegation was made, nor evidence introduced, to indicate that the encounters involved the use of force.

FN6: This cell phone call occurred the morning after Davis had spent all night at the hospital with her daughter. Appellant was apparently en route to a motorcycle race.

FN7: The witness explained that it is not the policy of BCI to make "identity statements." That is to say, the witness would not opine that the genetic material taken from the vaginal swab matched the genetic material taken from appellant. She did assure the jury, however, that she "would have to test approximately 3.6 quadrillion other people, to find somebody else who might be the source of the semen."

*State v. Keeley*, No. 11CA5, 2012 WL 3194355, at *1-2 (Ohio App. 4th Dist. Aug. 2, 2012).

Petitioner presented the following issues on direct appeal:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED DAVID P. KEELEY'S RIGHTS TO DUE PROCESS AND A FAIR TRIAL WHEN IT ENTERED A JUDGMENT OF CONVICTION FOR THEFT [sic ] AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."[1]

SECOND ASSIGNMENT OF ERROR:

"THE TRIAL COURT ERRED IN ADMITTING LAY WITNESS OPINION TESTIMONY THAT WAS UNRELATED TO THAT WITNESS'S PERCEPTIONS AND CALLED FOR SPECIALIZED KNOWLEDGE."

THIRD ASSIGNMENT OF ERROR:

"THE STATE'S MISCONDUCT, DURING ITS CLOSING ARGUMENT, DENIED MR. KEELEY THE RIGHT TO A FAIR TRIAL AND DUE PROCESS OF LAW, IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND SECTION 16, ARTICLE I OF THE OHIO CONSTITUTION."

FOURTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL BY FAILING TO OBJECT TO THE STATE'S IMPROPER STATEMENTS DURING ITS CLOSING ARGUMENT."

*Id*. at *1.[2] On August 2, 2012, the state appellate court affirmed the judgment of the trial court. *Id*. Petitioner did not file an appeal from that decision to the Ohio Supreme Court. On November 28, 2012, the appellate court denied Petitioner's application for reconsideration as untimely and without merit. *Entry on Application for Reconsideration* (ECF No. 7-1, PageID# 325).

---

[1] Petitioner actually asserted that his rape conviction was against the manifest weight of the evidence. The reference to "theft" was apparently a typographical error. *See State v. Keeley*, 2012 WL 3194355, at *3 n.8.

[2] Petitioner filed a *Motion for the Ability to File a Supplemental Brief Pro Se for Appeal*. (ECF No. 7-1, PageID# 260.) That motion was denied. *Id*. at PageID# 264. Petitioner filed an appeal with the Ohio Supreme Court. *Id*. at PageID# 265. On March 21, 2012, the Ohio Supreme Court declined jurisdiction to hear the case and dismissed the appeal as not involving any substantial constitutional question. *Id*. at PageID# 281.

On September 13, 2012, Petitioner filed an application to reopen the appeal pursuant to Ohio Appellate Rule 26(B).  *Id.* at PageID# 328.  Petitioner asserted that he had been denied the effective assistance of appellate counsel because his attorney failed to argue on appeal that the trial court denied him a fair trial when it failed to clarify jury confusion during deliberations, and improperly admitted expert testimony; that the prosecutor engaged in misconduct; that his convictions were against the manifest weight of the evidence and the evidence was constitutionally insufficient to sustain his convictions; that his trial counsel was ineffective; that he was denied discovery to which he was entitled and, consequently, due process; and that the State's use of electronic surveillance violated the Fourth Amendment.  *Id.* at PageID# 328-342.  On December 13, 2012, the appellate court denied Petitioner's Rule 26(B) application.  *Id.* at PageID# 351.  On January 9, 2013, Petitioner filed a notice of appeal from both the November 28, 2012, denial of his motion for reconsideration and the December 13, 2012, denial of his Rule 26(B) application.  *Id.* at PageID# 360.  On March 27, 2013, the Ohio Supreme Court declined to accept jurisdiction of the appeal pursuant to S.Ct.Prac.R. 7.08(B)(4).  *Id.* at PageID# 408.

Petitioner also pursued post conviction relief.

> On December 5, 2011, while his first appeal of right was pending, appellant filed a petition for postconviction relief with the trial court. Although the court dismissed the petition on *res judicata* grounds, we reversed the judgment and remanded the case for further proceedings. In so doing, a majority of this Court held that *res judicata* did not bar arguments from being raised on post-conviction relief if an appeal of right was pending. *See State v. Keeley*, 2013–Ohio–474, 989 N.E.2d 80 (4th Dist.) (*Keeley II*). The Ohio Supreme Court denied an appeal from that decision. *See State v. Keeley*, 135 Ohio St.3d 1460, 2013–Ohio–2285, 988 N.E.2d 579 (Keeley IIA ).

> On August 8, 2013, after our reversal and remand of *Keeley II*, the trial court entered judgment and found that appellant "failed to show that he is entitled to post conviction relief."

6

*State v. Keeley,* No. 13CA34, 2014 WL 800488, at *1 (Ohio App. 4th Dist. Feb. 21, 2014).

Petitioner appealed from that decision, raising the following assignments of error:

FIRST ASSIGNMENT OF ERROR:

"THE TRIAL COURT VIOLATED THE PETITIONERS [sic] RIGHTS TO DUE PROCESS OF THE LAW WHEN IT FAILED TO CLEAR WAY THE JURIES [sic] CONFUSION AND PLAIN ERROR FOR FAILING TO CLARIFY THEIR CONFUSION."

SECOND ASSIGNMENT OF ERROR:

"THE STATES [sic] USE OF 'EXPERT' TESTIMONY PREJUDICED THE APPELLANT AND ADDED TO THE JURIES [sic] CONFUSION. THE USE OF THESE TESTIMONIES CAUSED THE JURY TO LOSE ITS WAY. THE TESTIMONIES WERE NOT VALID AGAINST PROVEN SCIENTIFIC AND PSYCHOLOGICAL METHODOLOGY. PROSECUTORIAL MISCONDUCT AND PLAIN ERROR SHOULD APPLY."

THIRD ASSIGNMENT OF ERROR:

"THERE IS INSUFFICIENT EVIDENCE TO SUSTAIN THE CONVICTION UNDER THE STANDARDS OF 'SUFFICIENCY OF EVIDENCE' AND 'MANIFEST WEIGHT OF THE EVIDENCE'."

FOURTH ASSIGNMENT OF ERROR:

"THE PROSECUTOR'S MISCONDUCT DEMONSTRATED UNPROFESSIONALISM AND VINDICTIVENESS [AND] DENIED THE APPELLANT [sic] RIGHTS TO A FAIR AND IMPARTIAL TRIAL. HIS ACTIONS INSIDE AND OUTSIDE THE COURTROOM DEMONSTRATE THAT THIS HAD BECOME A PERSONAL VENDETTA AGAINST THE APPELLANT AND HIS FAMILY."

FIFTH ASSIGNMENT OF ERROR:

"TRIAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL FOR THE REASONS LISTED BELOW WHICH VIOLATED THE APPELLANTS [sic] RIGHTS TO A FAIR AND IMPARTIAL TRIAL AGAINST THE FIFTH, SIXTH AND

FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION."

SIXTH ASSIGNMENT OF ERROR:

"THE STATES [sic] USE OF ELECTRONIC SURVEILLANCE VIOLATED THE APPELLANTS [sic] FOURTH AMENDMENT OF THE UNITED STATES CONSTITUTIONAL RIGHTS [sic] AND ALSO VIOLATED TITLE iii STATUTE [sic]."

*Id*. On February 21, 2014, the appellate court affirmed the trial court's judgment dismissing the postconviction petition, holding that Petitioner's claims were barred under Ohio's doctrine of *res judicata. Id.* On January 28, 2015, the Ohio Supreme Court declined to accept jurisdiction of Petitioner's appeal from that decision. *State v. Keeley*, 141 Ohio St.3d 1455 (Ohio 2015). On March 25, 2015, the Ohio Supreme Court denied Petitioner's motion for reconsideration. *State v. Keeley*, 142 Ohio St.3d 1412 (Ohio 2015).

On May 9, 2016, Petitioner filed the *Amended Petition* pursuant to 28 U.S.C. § 2254. He asserts that the trial court denied his right to due process when it "failed to clear away the jury['s] confusion" during deliberations (claim one); that the State's use of expert testimony prejudiced him, added to the jury's confusion, and amounted to prosecutorial misconduct and a denial of due process (claim two); that the evidence is constitutionally insufficient to sustain his convictions (claim three); that he was denied a fair trial because of prosecutorial misconduct (claim four); that he was denied the effective assistance of trial counsel (claim five); that he was denied his right to due process and discovery in violation of Ohio law (claim six); that the State's use of electronic surveillance violated the Fourth Amendment and "Title iii statute" (claim seven); and that he was prejudiced by incorrect statements to the media "which then influenced the populace to an assumption of guilt before trial" (claim eight).

As an initial matter, Respondent disagrees that Petitioner deleted his unexhausted claims and argues that the Court should therefore dismiss this action as unexhausted. *Supplemental Answer* (ECF No. 16). However, Petitioner has made clear his intention to withdraw any unexhausted claims from these proceedings and to proceed only on his remaining, unexhausted, claims. *Response and Amended Petition* (ECF No. 13, PageID# 13); *Amended Petition* (ECF No. 14). Under these circumstances, the Court will therefore address Petitioner's remaining, exhausted, claims.

Respondent also argues that Petitioner's claims have been procedurally defaulted. *Return of Writ,* PageID# 132-33. This Court agrees.

## Procedural Default

In recognition of the equal obligation of the state courts to protect the constitutional rights of criminal defendants, and in order to prevent needless friction between the state and federal courts, a state criminal defendant with federal constitutional claims is required to present those claims to the highest court of the state for consideration. 28 U.S.C. § 2254(b), (c). If the petitioner fails to do so, but the state still provides a remedy to pursue, his or her petition is subject to dismissal for failure to exhaust state remedies. *Id.*; *Coleman v. Thompson*, 501 U.S. 722, 731 (1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). If, because of a procedural default, the petitioner can no longer present the relevant claims to a state court, the petitioner also waives the claims for purposes of federal habeas review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Coleman,* 501 U.S. at 724; *Murray v. Carrier,* 477 U.S. 478, 485 (1986).

In the Sixth Circuit, a court must undertake a four-part analysis to determine whether procedural default is a bar to a habeas petitioner's claims. *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986); *see also Scuba v. Brigano*, 259 F. App'x. 713, 718 (6th Cir. 2007) (following the four-part analysis of *Maupin*). Specifically, the United States Court of Appeals for the Sixth Circuit requires the district courts to engage in the following inquiry:

First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. Second, the court must determine whether the state courts actually enforced the state procedural sanction. Third, the court must determine whether the forfeiture is an adequate and independent state ground on which the state can rely to foreclose review of a federal constitutional claim. *Maupin,* 785 F.2d at 138. Finally, if "the court determines that a state procedural rule was not complied with and that the rule [has] an adequate and independent state ground, then the petitioner" may still obtain review of his or her claims on the merits if the petitioner establishes: (1) cause sufficient to excuse the default and (2) that he was actually prejudiced by the alleged constitutional error. *Id*. "Cause" under this test "must be something external to the petitioner, something that cannot fairly be attributed to him[, *i.e*.,] . . . some factor external to the defense [that] impeded [ ] efforts to comply with the State's procedural rule." *Coleman,* 501 U.S. at 753. This "cause and prejudice" analysis also applies to failure to raise or preserve issues for review at the appellate level and to the failure to appeal at all. *Id.* at 750.

However, "'[i]n appropriate cases, the principles of comity and finality that inform the concepts of cause and prejudice 'must yield to the imperative of correcting a fundamentally unjust incarceration.'" *Murray*, 477 U.S. at 495 (quoting *Engle v. Isacc*, 456 U.S. 107, 135 (1892)). Petitioners who have not established cause and prejudice sufficient to excuse a

procedural default may nonetheless obtain review of their claims if they can demonstrate that a court's refusal to consider a claim would result in a "fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750; *Lott v. Coyle,* 261 F.3d 594, 601–02 (6th Cir. 2001).   The fundamental miscarriage of justice exception requires a showing that, "in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *Schlup v. Delo,* 513 U.S. 298, 329 (1995).

In claim one, Petitioner alleges that he was denied a fair trial because the trial court failed to clarify jury confusion during deliberations.  In claim two, Petitioner alleges that he was denied a fair trial based on the improper admission of expert testimony.  In claim three, Petitioner alleges  that the evidence is constitutionally insufficient to sustain his convictions.  In claim four, Petitioner alleges that he was denied a fair trial because of prosecutorial misconduct in connection with the prosecution's questioning of the alleged victim, and with the elicitation of false testimony, opinion statements, and remarks regarding Viagra.  In claim five, Petitioner alleges that he was denied the effective assistance of trial counsel because his attorney failed to secure petitioner's acquittal, failed to present a nurse's statement, failed to object to personal attacks by the prosecution, failed to use available evidence, to conduct research, and to locate Petitioner's physician, failed to object to missing discovery, failed to request a change of venue, failed to object to prosecutorial misconduct, failed to correct perjured testimony, failed to investigate the charges or to interview prosecution witnesses, and failed to object to the legality of the wiretap.  In claim six, Petitioner alleges that he was denied his right to discovery.  In claim seven, Petitioner alleges that the use of electronic surveillance violated the Fourth Amendment and "Title iii statute."  In claim eight, Petitioner alleges that incorrect statements to the media denied him a fair trial.

Petitioner failed to raise the foregoing claims on appeal.  Further, he may now no longer do so by virtue of Ohio's doctrine of *res judicata*.  *See State v. Cole*, 2 Ohio St.3d (1982); *State v. Ishmail*, 67 Ohio St.2d 16 (1981); *State v. Perry*, 10 Ohio St.2d 175 (1967) (claims must be raised on direct appeal, if possible, or they will be barred by the doctrine of *res judicata*.). Moreover, the state courts were never given an opportunity to enforce the procedural rule at issue due to the nature of Petitioner's procedural default.

To the extent that any of the foregoing claims may rely on evidence that is not readily apparent from the face of the record, such claims should have been, but were not, raised by Petitioner in his postconviction proceedings.  Moreover, it does not appear that Petitioner can now properly file a second postconviction petition. *See* O.R.C. § 2953.23.[3]

---

[3] O.R.C. § 2953.23 provides:

(A) Whether a hearing is or is not held on a petition filed pursuant to section 2953.21 of the Revised Code, a court may not entertain a petition filed after the expiration of the period prescribed in division (A) of that section or a second petition or successive petitions for similar relief on behalf of a petitioner unless division (A)(1) or (2) of this section applies:

(1) Both of the following apply:

(a) Either the petitioner shows that the petitioner was unavoidably prevented from discovery of the facts upon which the petitioner must rely to present the claim for relief, or, subsequent to the period prescribed in division (A)(2) of section 2953.21 of the Revised Code or to the filing of an earlier petition, the United States Supreme Court recognized a new federal or state right that applies retroactively to persons in the petitioner's situation, and the petition asserts a claim based on that right.

(b) The petitioner shows by clear and convincing evidence that, but for constitutional error at trial, no reasonable factfinder would have found the petitioner guilty of the offense of which the petitioner was convicted or, if the claim challenges a sentence of death that, but for constitutional error at the sentencing hearing, no reasonable factfinder would have found the petitioner eligible for the death sentence.

(2) The petitioner was convicted of a felony, the petitioner is an offender for whom DNA testing was performed under sections 2953.71 to 2953.81 of the Revised Code or under former section 2953.82 of the Revised Code and analyzed in the context of and upon consideration of all available admissible evidence related to the inmate's case as described in division (D) of section 2953.74 of the Revised Code, and the results of the DNA testing establish, by clear and convincing evidence, actual innocence of that felony offense or, if the person was sentenced to death, establish, by clear and convincing evidence, actual innocence of the aggravating circumstance or circumstances the person was found guilty of committing and that is or are the basis of that sentence of death.

Petitioner did attempt to raise some of the foregoing on-the-record claims in his petition for postconviction relief.  However, the state appellate court explicitly declined to address the merits of those claims because they were barred by Ohio's doctrine of *res judicata*:

> [A] defendant who seeks postconviction relief cannot raise any issue that he could have raised, but did not, in a first appeal of right. *See State v. Szefcyk*, 77 Ohio St.3d 93, 96, 671 N.E.2d 233 (1996) at the syllabus. Likewise, an issue raised and adjudicated in a first of appeal of right cannot be raised again on postconviction relief. *State v. Thompkins*, 10th Dist. Franklin No. 12AP–1080, 2013–Ohio–3599, at ¶ 10; *State v. Harper*, 5th Dist. Guernsey No. 12CA22, 2013–Ohio–1781, at ¶ 39. In the case *sub judice*, appellant's brief appears to litigate, or re-litigate, a number of issues that already have been raised, or should have been raised, in *Keeley I.*
>
> Appellant's first argument involves questions the jury raised during deliberation concerning the victim's guardianship and whether the State had "guidelines for sexual consent due to mental level." Appellant argues that the trial court's failure to "clear away the juries [sic] confusion" amounts to plain error and violates due process.
>
> First, this issue could have been raised in *Keeley I*, but was not. Consequently, *res judicata* now bars the issue from being raised. Second, questions from a jury during deliberation are routine and generally are not a sign of confusion. Third, the questions the jury did ask are irrelevant. Fourth, when the trial court declined to answer their questions, defense counsel was asked if he wanted the court to say anything else on the matter. Counsel answered in the negative. There is no merit to this issue.
>
> Appellant also argues that the trial court erred by allowing several witnesses to give expert testimony. However, we examined this issue in *Keeley I, supra* at ¶¶ 21–25, albeit in the context of whether the victim's mother could give expert testimony about her

---

As used in this division, "actual innocence" has the same meaning as in division (A)(1)(b) of section 2953.21 of the Revised Code, and "former section 2953.82 of the Revised Code" has the same meaning as in division (A)(1)(c) of section 2953.21 of the Revised Code.

(B) An order awarding or denying relief sought in a petition filed pursuant to section 2953.21 of the Revised Code is a final judgment and may be appealed pursuant to Chapter 2953. of the Revised Code.

daughter. Appellant could have also raised questions concerning whether the other two witnesses are qualified, but he failed to do so. *Res judicata* bars these issues from being raised again. Moreover, we find nothing in appellant's brief to persuade us that this issue would have merit.

The next argument is that insufficient evidence supports appellant's convictions and that they are against the manifest weight of the evidence. We, however, have previously ruled against appellant on the latter issue. *See Keeley, I, supra* at ¶ 20. Appellant could also have raised a sufficiency of the evidence argument at the same time, but did not. Appellant is barred from doing so now by the doctrine of *res judicata*. Furthermore, even if the issue had been raised, and even though sufficiency and manifest weight are different questions, we would nevertheless have ruled against appellant on a sufficiency challenge in view of our recitation of all of the evidence we reviewed in *Keeley I.*

Appellant also argues that he is the victim of prosecutorial misconduct and constitutionally ineffective assistance from his trial counsel. We, however, already considered these issues in *Keeley I* and ruled against appellant on both. *Id.* at ¶¶ 27–31.

Finally, appellant claims that the "controlled phone call" to him from the victim's mother, while police were listening, violated his constitutional rights. To begin, if appellant believed this constituted a violation of his rights, he should have raised the issue in a pre-trial motion to suppress. Nothing in the record indicates that he did. Thus, appellant waived the issue. This is also an issue that could have been raised, but was not, in *Keeley I* and is thus barred by *res judicata*. Furthermore, this phone call is not—as appellant suggests in his brief—a "wiretap." Appellant's family and the victim's family were friends, and this would have been nothing more than a call between those friends, not a "tap" that authorities needed permission from a court to place. Furthermore, as the State aptly notes in its brief, R.C. 2933.52(B)(3) permits the interception of a phone call if one party to that call (in this case, the victim's mother) has given consent. Thus, this activity did not result from a statutory violation or a Fourth Amendment violation. *See State v. Haynes*, 11th Dist. Ashtabula No.2012–A–0032, 2013–Ohio–2401, at ¶ 46; *State v. Hennis*, 2nd Dist. Clark No. Civ.A.2003CA21, 2005–Ohio–51, at ¶ 20.

For all of these reasons, we find no merit to any argument appellant raised in his petition for postconviction relief. Thus, we find no error in the trial court's decision to deny that petition and

> we hereby overrule appellant's assignments of error and affirm the
> trial court's judgment.

*State v. Keeley*, 2014 WL 800488, at *2-3.[4]

Ohio's doctrine of *res judicata* is adequate and independent under the third part of the
*Maupin* test. To be "independent," the procedural rule at issue, as well as the state court's
reliance thereon, must rely in no part on federal law.  *See Coleman v. Thompson*, 501 U.S. 722,
732–33 (1991). To be "adequate," the state procedural rule must be firmly established and
regularly followed by the state courts.  *Ford v. Georgia*, 498 U.S. 411 (1991).  "[O]nly a 'firmly
established and regularly followed state practice' may be interposed by a State to prevent
subsequent review by this Court of a federal constitutional claim."   *Id*. at 423 (quoting *James v.
Kentucky*, 466 U.S. 341, 348–351 (1984)); *see also Barr v. City of Columbia*, 378 U.S. 146, 149
(1964); *NAACP v. Alabama ex rel. Flowers*, 377 U.S. 288, 297 (1964); *see also Jamison v.
Collins,* 100 F.Supp.2d 521, 561 (S.D. Ohio 1998).

The Sixth Circuit has consistently held that Ohio's doctrine of *res judicata, i.e.,* the *Perry*
rule, is an adequate ground for denying federal habeas relief.  *Lundgren v.  Mitchell*, 440 F.3d
754, 765 (6th Cir. 2006); *Coleman v. Mitchell*, 268 F.3d 417, 427–29 (6th Cir. 2001); *Seymour* v.
*Walker*, 224 F.3d 542, 555 (6th Cir. 2000); *Byrd v. Collins*, 209 F.3d 486, 521–22 (6th Cir.
2000); *Norris v. Schotten*, 146 F.3d 314, 332 (6th Cir. 1998). Ohio courts have consistently
refused, in reliance on the doctrine of *res judicata*, to review the merits of claims because they
are procedurally barred. *See State v. Cole*, 2 Ohio St.3d at 112; *State v. Ishmail*, 67 Ohio St.2d at
16.  Additionally, the doctrine of *res judicata* serves the state's interest in finality and in ensuring

---

[4] The state appellate court's alternative ruling on the merits of certain claims does not excuse Petitioner's procedural
default of those clamis.  *See Conley v. Warden, Chillicothe Correctional Institution*, 505 Fed.Appx. 501,
unpublished, 2012 WL 5861713, at *5 (6th Cir. 2012)("The Ohio court's alternative ruling on the merits did not
remove the procedural default because 'a state court need not fear reaching the merits of a federal claim in an
alternative holding.'")(citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10, (1989); *Coe v. Bell*, 161 F.3d 320, 330 (6th
Cir. 1998)).

that claims are adjudicated at the earliest possible opportunity. With respect to the independence prong, the Court concludes that Ohio's doctrine of *res judicata* in this context does not rely on or otherwise implicate federal law. Accordingly, the Court is satisfied from its own review of relevant case law that the *Perry* rule is an adequate and independent ground for denying relief.

Therefore, Petitioner has procedurally defaulted his claims for federal habeas corpus review.  He may still secure review of his claims on the merits if he demonstrates cause for his failure to follow the state procedural rules, as well as actual prejudice from the constitutional violations that he alleges. *See Coleman,* 501 U.S. at 753; *Maples v. Stegall,* 340 F.3d 433, 438 (6th Cir. 2003).

As cause for his procedural default, Petitioner asserts the denial of the effective assistance of his appellate counsel.  *See Petitioner's Traverse to the Respondents* [sic] *Answer/Return of Writ,* PageID# 1598-99. The constitutionally ineffective assistance of counsel may constitute cause for a procedural default, so long as such claim has been presented to the state courts and is not, itself, procedurally defaulted.  *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488–89 (1986)).

This Court will consider the merits of those claims of ineffective assistance of appellate counsel presented in Petitioner's Rule 26(B) application to determine whether he has established cause and prejudice sufficient to excuse his procedural default.

### Standard of Review

Petitioner seeks habeas relief under 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act ("AEDPA") sets forth standards governing this Court's review of state-court determinations. The United State Supreme Court recently described AEDPA as "a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court"

and emphasized that courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." *Burt v. Titlow*, ––– U.S. ––––, ––––, 134 S.Ct. 10, 16 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86 (2011)); *see also Renico v. Lett*, 559 U.S. 766, 773 (2010) ("AEDPA . . . imposes a highly deferential standard for evaluating state-court rulings, and demands that state court decisions be given the benefit of the doubt." (internal quotation marks, citations, and footnote omitted)).

The factual findings of the state appellate court are presumed to be correct.

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1). Moreover, "a writ of habeas corpus should be denied unless the state court decision was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court, or based on an unreasonable determination of the facts in light of the evidence presented to the state courts." *Coley v. Bagley*, 706 F.3d 741, 748 (6th Cir. 2013) (citing *Slagle v. Bagley*, 457 F.3d 501, 513 (6th Cir. 2006)); 28 U.S.C. § 2254(d)(1) (a petitioner must show that the state court's decision was "contrary to, or involved an unreasonable application of, clearly established federal law"); 28 U.S.C. § 2254(d)(2) (a petitioner must show that the state court relied on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding"). The United States Court of Appeals for the Sixth Circuit has explained these standards as follows:

> A state court's decision is "contrary to" Supreme Court precedent if (1) "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law[,]" or (2) "the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives" at a

different result. *Williams v. Taylor*, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). A state court's decision is an "unreasonable application" under 28 U.S.C. § 2254(d)(1) if it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular . . . case" or either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context. *Id.* at 407, 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389.

*Coley,* 706 F.3d at 748–49. The burden of satisfying the standards set forth in § 2254 rests with the petitioner. *Cullen v. Pinholster*, 563 U.S.170, 181 (2011).

"In order for a federal court to find a state court's application of [Supreme Court precedent] unreasonable, . . . [t]he state court's application must have been objectively unreasonable," not merely "incorrect or erroneous." *Wiggins v. Smith,* 539 U.S. 510, 520–21, (2003) (internal quotation marks omitted) (citing *Williams v. Taylor*, 529. U.S. at 409, and *Lockyer v. Andrade*, 538 U.S. 63, 76 (2003)); *see also Harrington v. Richter*, 131 S.Ct. at 786 ("A state court's determination that a claim lacks merit precludes federal habeas relief so long as "'fairminded jurists could disagree' on the correctness of the state court's decision." (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In considering a claim of "unreasonable application" under § 2254(d)(1), courts must focus on the reasonableness of the result, not on the reasonableness of the state court's analysis. *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) ("'[O]ur focus on the 'unreasonable application' test under Section 2254(d) should be on the ultimate legal conclusion that the state court reached and not whether the state court considered and discussed every angle of the evidence.'" (quoting *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002) (*en banc*))); *see also Nicely v. Mills*, 521 F. App'x 398, 403 (6th Cir. 2013) (considering evidence in the state court record that was "not expressly considered by the state court in its opinion" to evaluate the reasonableness of state court's decision). Relatedly, in

evaluating the reasonableness of a state court's ultimate legal conclusion under § 2254(d)(1), a court must review the state court's decision based solely on the record that was before it at the time it rendered its decision. *Pinholster*, 563 U.S. at 181. Put simply, "review under § 2254(d)(1) focuses on what a state court knew and did." *Id*. at 182.

The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14 (1970). The standard for demonstrating a claim of ineffective assistance of counsel is composed of two parts:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). Scrutiny of defense counsel's performance must be "highly deferential." *Id*. at 689.

With respect to the first prong of the *Strickland* test, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. To establish the second prong of the *Strickland* test, *i.e.,* prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because a petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the court determine that the petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697.

The *Strickland* test applies to appellate counsel. *Burger v. Kemp*, 483 U.S. 776, 781-82 (1987). Counsel must provide reasonable professional judgment in presenting the appeal. *Evitts v. Lucey*, 469 U.S. 387, 396-97 (1985). "'[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983). The Court of Appeals for the Sixth Circuit has identified the following considerations that ought to be taken into account in determining whether counsel on direct appeal performed reasonably competently:

1. Were the omitted issues "significant and obvious?"

2. Was there arguably contrary authority on the omitted issues?

3. Were the omitted issues clearly stronger than those presented?

4. Were the omitted issues objected to at trial?

5. Were the trial court's rulings subject to deference on appeal?

6. Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?

7. What was appellate counsel's level of experience and expertise?

8. Did the Petitioner and appellate counsel meet and go over possible issues?

9. Is there evidence that counsel reviewed all the facts?

10. Were the omitted issues dealt with in other assignments of error?

11. Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Mapes v. Coyle*, 171 F.3d 408, 427-28 (6th Cir. 1999). This list is not exhaustive and need not produce a certain "score." *Id*. at 428.

Petitioner alleges that he was denied the effective assistance of appellate counsel because his attorney failed to raise on appeal a claim that the evidence is constitutionally insufficient to sustain his convictions. Appellate counsel did argue that Petitioner's convictions were against the manifest weight of the evidence but the state appellate court rejected that claim in relevant part as follows:

> Appellant's first assignment of error challenges the weight of the evidence regarding one factor necessary to prove the offense of rape. R.C. 2907.02(A)(1)(c) prohibits someone from having sex with another person, who is not his spouse, when the "other person's ability to . . . consent is substantially impaired because of a mental . . . . condition . . . and the offender knows or has reasonable cause to believe that the other person's ability to . . . consent is substantially impaired[.]" Whether a non-forcible sexual encounter with an adult constitutes rape is, thus, dependent on whether the victim had a "substantial impairment" that prohibited her from having the ability to consent to the sexual contact.

> Once again, appellant did not contest at trial, nor on appeal, that sexual relations occurred. What appellant does argue is that the jury's conclusion that R.D. could not consent to those encounters is against the manifest weight of the evidence.

> ***

> The phrase "substantial impairment" is not defined in R.C. 2907.02, nor has the Ohio Supreme Court provided any definition. *State v. Daniels,* Summit App. No. 25808, 2011–Ohio–6414, at ¶ 6. We are confident, however, that under any definition, the evidence in the case *sub judice* established that R.D. had a substantial impairment and, consequently, could not consent to sexual relations. Jane Davis, R.D.'s mother, testified that she is her daughter's guardian and that R.D. scored 50–60 on IQ tests. We note that our Ninth District colleagues found that a victim's guardianship, and a 58 IQ, are factors that a jury could consider to find substantial impairment. *Id*. at ¶¶ 7–9.

> Moreover, Davis further testified that her daughter has the mind of a 6 to 9 year old child. Lauren Dutton, who examined R.D. at the hospital, testified that R.D. acted like an 8 year old. Molly Haught, R.D.'s counselor at the Wellness Center in Parkersburg, related R.D. has an emotional age of a 5–7 year old. Dr. Michael

Holtgrewe, who participated in prior guardianship proceedings with Davis, opined that R.D. functions at a 7–8 year old mentality.

Admittedly, the evidence adduced at trial does not firmly affix R.D.'s level of cognitive functioning. Nevertheless, we do not believe that a firm or concrete age level is required. Here, four witnesses placed R.D.'s cognitive mental and emotional level at that of a child below the age of thirteen. This age is also the threshold at which the Ohio General Assembly has deemed that no one can give consent to sex. *See* R.C. 2907.02(A)(1)(b). In the case *sub judice*, in view of the testimony of these witnesses, three of whom are professionals unrelated to the victim, we cannot conclude that the jury lost its way in determining that R.D. has a substantial impairment toward giving consent to sexual relations.

We again recognize that the parties adduced conflicting evidence at trial. Appellant testified that R.D. behaved like a 16 to 18 year old at the time of the offense. Another defense witness, Harriet Metcalf, related that she had met R.D. and she also thought that she behaved like a 16 year old. However, it is well-settled that evidence weight and witness credibility are issues that the trier of fact must consider and determine and appellate courts afford great deference to those determinations. *State v. Frazier*, 115 Ohio St.3d 139, 873 N.E.2d 1263, 2007–Ohio–5048, at ¶ 106; *State v. Dye* (1998), 82 Ohio St.3d 323, 329, 695 N.E.2d 763. The rationale for deferring to the trier of fact on such issues is that the trier of fact is best positioned to view the witnesses, to observe demeanor, gestures and voice inflections and to use those observations to weigh witness credibility. *See Myers v. Garson* (1993), 66 Ohio St.3d 610, 615, 614 N.E.2d 742; *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. Thus, a jury is free to believe all, part, or none of the testimony of any witness who appears before it. *State v. Colquitt*, 188 Ohio App.3d 509, 936 N.E.2d 76, 2010–Ohio–2210, at ¶ 10, fn. 1; *State v. Nichols* (1993), 85 Ohio App.3d 65, 76, 619 N.E.2d 80. Here, these principles are particularly important because the jury viewed the witnesses who testified about R.D.'s mental capability, and also actually observed R.D. testify on the witness stand. Thus, the jury could formulate its own conclusions as to R.D.'s mental age.

For all these reasons, we cannot conclude that the verdicts are against the manifest weight of the evidence[.]

*State v. Keeley*, 2012 WL 3194355, at *3-4 (footnote omitted).  In postconviction proceedings,

the state appellate court also observed that, in light of its recitation of all of the evidence

reviewed on direct appeal, it would have rejected a claim of insufficiency of the evidence had

Petitioner raised that claim on direct appeal.  *See State v. Keeley*, 2014 WL 800488, at *2.  The

state appellate court denied the claim in Rule 26(B) proceedings on this same basis:

> We held in *Keeley I* that appellant's conviction is in fact, supported
> by the manifest weight of the evidence.  Although evidence weight
> and sufficiency are two distinct questions. . . a finding that the
> weight of the evidence supports a judgment is tantamount to
> finding that sufficient evidence supports the judgment as well.

(ECF No. 7-1, PageID# 355-56.)

In *Jackson v. Virginia*, 443 U.S. 307 (1979), the United States Supreme Court held that as

a matter of fundamental due process, a criminal conviction cannot stand unless each essential

element is proven beyond a reasonable doubt.  *Id*. at 316. The Supreme Court explained that

when reviewing a challenge to the constitutional sufficiency of the evidence supporting a

criminal conviction, "the relevant question is whether, after viewing the evidence in the light

most favorable to the prosecution, any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt."  *Id*. at 319.  The Supreme Court cautioned,

with respect to the role of a reviewing court, that "[t]his familiar standard gives full play to the

responsibility of the trier of fact fairly to resolve conflicts in testimony, to weigh the evidence,

and to draw reasonable inferences from basic facts to ultimate facts."  *Id*.

When reviewing a sufficiency of the evidence claim, a federal habeas court "do[es] not

reweigh the evidence, re-evaluate the credibility of the witnesses, or substitute [its] judgment for

that of the jury."  *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  If the record contains

credible, competent evidence enabling a rational jury to find each essential element beyond a

reasonable doubt, then the petitioner's challenge to the sufficiency of the evidence fails.  *See also*

*Matthews v. Abramajtys*, 319 F.3d 780, 788–89 (6th Cir. 2003) ("The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim.").

Here, for the reasons detailed by the state appellate court, this Court agrees that, viewing all the evidence in the light most favorable to the prosecution, the evidence is constitutionally sufficient to sustain Petitioner's convictions.  Therefore, Petitioner has failed to establish the denial of the effective assistance of his appellate counsel based on his appellate attorney's failure to raise that claim on direct appeal.

Petitioner also alleges that his appellate attorney improperly failed to raise a claim that the trial court denied him due process by failing to clarify jury questions during deliberations. The jury asked, "[W]hat guidelines justified the mother obtaining guardianship?" and "[D]oes the State have guidelines for sexual consent due to the mental levels?"  (ECF No. 7-4, PageID# 1541.)  Prior to responding to the jury's questions, the trial court advised counsel:

> It's my intention to tell . . . the jurors that I cannot answer these questions.  They have . . . heard the evidence and the law that they're to use to decide the case.  You want anything else?

*Id*.  Defense counsel expressed satisfaction with that proposed response.  *Id*.  The trial court thereafter instructed the jury:

> Ladies and gentlemen, I cannot answer either one of these questions.  All I can tell you is that you have the evidence and the law that you're to use to decide this case.  And that's all I can say.
>
> Anything else either of you gentlemen want?
>
> [Defense counsel and prosecutor respond in the negative].

*Id.* at PageID# 1542.

The state appellate court denied Petitioner's claim of ineffective assistance of appellate counsel in connection with these events as follows:

> [A]ppellant claims that appellate counsel should have challenged the court's failure to "clear away" confusion allegedly demonstrated by the jury questions posed during deliberations. These questions involved:  (1) the existence of a guardianship, and (2) whether Ohio has any guidelines regarding consent to sexual conduct.  The first question was irrelevant to the trial court proceedings and the second is an issue that the jury had to determine.  The rape and GSI charges against appellant all included the element that the victim's ability to consent was "substantially impaired" by a mental or physical condition.  See R.C. 2907.02(A)(1)(c); R.C. 2907.05(A)(5).  The question of consent is one for the trier of fact – here, the jury – and the trial court correctly refused to answer that question.  In any event, even if we accept appellant's assertion that the trial court was under some duty to "clear away" the confusion and failed to do so, and even if appellate counsel would have raised the issue, we are not persuaded that the results of the case would have been different.

*Id.* PageID# 354-55.[5]  This Court agrees with the state appellate court's reasoning.

Evidence indicated that R.D. suffered from a mental disability and functioned at the cognitive level of a minor.  *State v. Keeley*, 2012 WL 3194355, at 5 *1.

> Although various prosecution witnesses offered different opinions, all agreed that R.D. behaved at a level below that of a 10 year old child. Appellant countered, however, that R.D. behaved that way only when she was near her mother.

*Id*. at *2.  Jane Davis, R.D.'s mother, testified that she was her daughter's guardian and that R.D. scored 50-60 on IQ tests.  *Id*. at *3.

> Davis further testified that her daughter has the mind of a 6 to 9 year old child. Lauren Dutton, who examined R.D. at the hospital, testified that R.D. acted like an 8 year old. Molly Haught, R.D.'s counselor at the Wellness Center in Parkersburg, related R.D. has an emotional age of a 5–7 year old. Dr. Michael Holtgrewe, who participated in prior guardianship proceedings with Davis, opined that R.D. functions at a 7–8 year old mentality.

---

[5] Arguably, moreover, even had appellate counsel raised this claim in the direct appeal, the claim would have been waived due to Petitioner's failure to object at trial.

*Id.* Further, the trial court properly instructed the jury on the elements of the offenses charged, including that, in order to return a guilty verdict, it must find that Petitioner had engaged in sexual conduct with R.D. when her ability to resist or consent was substantially impaired because of a mental condition, and that he knew or had reasonable cause to believe that her ability to resist or to consent was substantially impaired because of a mental condition. *See* ECF No. 7-4, PageID# 1518, 1521. Petitioner does not indicate, and the record does not reflect, that any additional response or clarification from the trial court regarding the questions posed by the jury would have assisted the defense. Indeed, any explanation of the basis for the mother's guardianship of R.D. may well have prejudiced the defense on this issue.

Petitioner also alleges that his attorney should have raised on appeal the claim that the prosecution's use of expert testimony constituted prosecutorial misconduct and created jury confusion. The state appellate court disagreed:

> Appellant appears to argue in his second proposed assignment of error that the expert testimony concerning the victim's mental disability is improper and confused the jury. To the extent we understand his argument, we refer appellant to our original decision wherein we held that the victim's cognitive functioning could be determined by anyone who interacted with her. *Keeley, supra* at ¶22. Although that applied to a lay witness (in particular, the victim's mother) the same principle applies to an expert witness. Moreover, appellant offers no evidence to show that the jury was confused on this point and, even had he done so, he does not persuade us that the outcome of the case would have been different if appellate counsel challenged this issue.

ECF No. 7-1, PageID# 355.[6] Thus, the state appellate court held that Ohio law permitted admission of the expert testimony about which Petitioner complains. Petitioner therefore cannot establish the denial of the effective assistance of appellate counsel on this basis.

---

[6] The appellate court referred to its decision rejecting Petitioner's argument that R.D.'s mother had improperly testified as a lay witness regarding R.D.'s ability to understand sexual activity:

Petitioner also alleges that his attorney improperly failed to raise on appeal other claims of prosecutorial misconduct. The state appellate court rejected this claim, noting that it had already addressed such an allegation on direct appeal:

> Appellant argues in his fourth proposed assignment of error that appellate counsel was ineffective for failing to challenge the prosecutor's "unprofessionalism" and "vindictiveness" during the trial court proceeding. However, in *Keeley I, supra* at ¶¶26-31, appellate counsel raised that issue. We found no error in our original decision and appellant offers nothing in his application to prompt us to reconsider that ruling.

---

Evid.R. 701 states that lay witness opinion testimony must be limited to those "rationally based on the perception of the witness." By contrast, expert testimony "relates to matters beyond the knowledge or experience possessed by lay persons." Evid.R. 702(A). Appellant argues that only an expert could testify about the extent to which R.D. understood sexual relations, and her mother is not such an expert. Appellant cites *In re Barnhart*, *Putnam App*. No. 12–07–13, 2008–Ohio–1782, ¶ 5 in support of his argument. Our reading of *Barnha*rt, however, does not agree with that particular interpretation. *Barnhart* noted that an expert gave testimony concerning the victim's ability to understand sexual matters, but nothing in that opinion states that only an expert can give that sort of testimony. Instead, we agree with the Eighth District that substantial impairment need not be proven by expert medical testimony, but can be established through the testimony of people who have interacted with the victim, and by allowing the trier of fact to assess the person's ability to appraise or control his or her conduct. *State v. Brady,* Cuyahoga App. No. 87854, 2007–Ohio–1453, at ¶ 78.

In the case *sub judice*, it is difficult to conceive of anyone who could possess a better understanding of a child's ability to comprehend sexual matters than a child's mother. Indeed, Jane Davis, who interacted with R.D. on a daily basis, may well have an understanding of how her daughter may process sexual information far better than any expert.FN9

It is again worth noting that the jury had the opportunity to observe R.D.'s testimony and to draw its own conclusion whether R.D. had sufficient maturity to understand to sex. As the trier of fact, the jury found she could not.

FN9: Interestingly, appellant argues that only an expert can testify regarding R.D.'s understanding of sexual matters when he, himself, testified that R.D. behaved like a 16 to 18 year old and another defense witness corroborated this view. Although testimony as to the victim's age does not explicitly go to her understanding of sex, this defense testimony implicitly suggested that R.D. behaved as if she was sixteen or above and, thus, able to understand and to consent to sexual relations.

*State v. Keeley*, 2012 WL 3194355, at *4-5.

*Id.* at PageID# 356.[7]  Further, the record does not support Petitioner's claim that the prosecutor improperly questioned the alleged victim or knowingly presented false or perjured testimony. Petitioner also alleges that the prosecutor "acted as an expert on the uses of Viagra" and other issues, and mocked Petitioner's medical issues; however, Petitioner does not refer to any specific portions of the trial transcript in support of this allegation.  Petitioner also complains that the prosecutor improperly bragged about the case after the trial had concluded.  Even assuming that to be the case, however, Petitioner has failed to establish prejudice as a result of such conduct.

---

[7] The state appellate court rejected this claim of prosecutorial misconduct as follows:

> Appellant contends the remarks amounted to improper comments on his credibility. In particular, appellant points to the prosecutor calling his testimony "Un-credible," "a bold faced lie," "preposterous" and "just crap."

> It is true that neither the prosecution nor the defense may vouch, or offer their personal beliefs, concerning witness credibility. *See State v. McGlothin*, Hamilton App. No. C–060145, 2007–Ohio–4707, at ¶¶ 19–20*; State v. Bevins*, Hamilton App. No. C–050754, 2006–Ohio–6974, at ¶ 27. We agree, on the one hand, that the comments in the case at bar are very emphatic. On the other hand, appellant did place his credibility into question when he testified that he lied to police about inserting his finger into R.D. during their encounter. Moreover, appellant has attempted to cast someone who has been characterized with a pre-teen cognitive level as the sexual aggressor in these encounters—something that strains credulity if the prosecution's testimony is to be believed, and the trier of fact obviously did so.

> Furthermore, because appellant did not object to these alleged instances of prosecutorial misconduct, appellant waived all but plain error. *See State v. Goff*, Lawrence App. No. 07CA17, 2009–Ohio–4914, at ¶ 91; *State v. Givens*, Washington App. No. 07CA19, 2008–Ohio–1202, at ¶¶ 26–27. Notice of Crim.R. 52(B) plain error must be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. *State v. Rohrbaugh*, 126 Ohio St.3d 421, 934 N.E.2d 920, 2010–Ohio–3286, at ¶ 6; *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus. To find plain error, we must be able to say that, but for the alleged error, the outcome of trial clearly would have been otherwise. *State v. McCausland*, 124 Ohio St.3d 8, 918 N.E.2d 507, 2009–Ohio–5933, at ¶ 15; *State v. Braden,* 98 Ohio St.3d 354, 785 N.E.2d 439, 2003–Ohio–1325, at ¶ 50. Prosecutorial misconduct rises to plain error only if it is clear that a defendant would not have been convicted in the absence of the improper comments. *State v. Conley*, Pike App. No. 08CA784, 2009–Ohio–1848, at ¶ 27; *State v. Olvera–Guillen*, Butler App. No. CA2007–05–118, 2008–Ohio–5416, at ¶ 36.

> In the case *sub judice*, R.D. testified that appellant inserted his penis inside her "front bottom." Appellant admitted touching R.D. on both occasions, and masturbating over her on the second instance of alleged sexual conduct. BCI witnesses testified that semen was found inside R.D.'s vagina and that a genetic profile could not exclude appellant as the source of that semen. Appellant also indicated in the taped conversation with R.D.'s mother, as well as his conversation with police, that he digitally penetrated R.D. In light of all this evidence, we cannot conclude that the outcome of the trial would have been otherwise but for the prosecutor's comments.

Petitioner alleges that his attorney improperly failed to raise on appeal a claim that the prosecutor violated discovery rules.  The state appellate court disagreed:

> Appellant asserts. . . that his rights were violated because discovery materials the State provided on compact disks "would not play on any of the equipment possessed by the appellant or his family."  We find several problems with this argument.  First, appellant offers no argument that his trial counsel could not access these compact disks.  Second, and more important, appellant does not establish how he suffered any prejudice.  Appellant does not argue that anything on that medium would have aided his defense.  As we have said many times, we may not simply assume prejudice for purposes of an ineffective assistance claim, but, rather, require that prejudice be affirmatively demonstrated. . . . Thus, appellant has not shown how he suffered prejudice by discovery not being readable in the particular format.  We will not engage in speculation and, thus, we find no merit to appellant's [] assignment of error.

(ECF No. 7-1, PageID# 357.)  For the reasons discussed by the state appellate court, this Court agrees that the record does not establish prejudice to the defense in this regard.

Petitioner alleges that his attorney improperly failed to raise on appeal a claim that the trial court improperly admitted evidence regarding a telephone conversation between Petitioner and the mother of the alleged victim, in violation of the Fourth Amendment.  The state appellate court rejected this claim as follows:

> [I]n appellant's seventh proposed assignment of error he challenges the "controlled" telephone call between him and the victim's mother.  First, he contends that "[t]he mother told untruths to try and trap the defendant[.]"  This, however, goes to the weight of the evidence, rather than to the admissibility or constitutionality of the telephone call.   Second, because the victim's mother initiated the phone call, and appellant willingly answered the questions the mother posited, we are not persuaded that any Fourth Amendment violation occurred.  Moreover, even if we assume that such a violation occurred, we are not persuaded that the outcome of the appeal would have been different in view of all the other evidence adduced at trial, including the testimony of the victim (R.D.), as well as the testimony of Emily Draper (a B.C.I. Forensic

> Scientist) that appellant could not be excluded as the source of the semen collected from the victim.

*Id.* at PageID# 357.  In postconviction proceedings, the state appellate court held as follows:

> [A]ppellant claims that the "controlled phone call" to him from the victim's mother, while police were listening, violated his constitutional rights. To begin, if appellant believed this constituted a violation of his rights, he should have raised the issue in a pre-trial motion to suppress. Nothing in the record indicates that he did. Thus, appellant waived the issue. This is also an issue that could have been raised, but was not, in *Keeley I* and is thus barred by *res judicata*. Furthermore, this phone call is not—as appellant suggests in his brief—a "wiretap." Appellant's family and the victim's family were friends, and this would have been nothing more than a call between those friends, not a "tap" that authorities needed permission from a court to place. Furthermore, as the State aptly notes in its brief, R.C. 2933.52(B)(3) permits the interception of a phone call if one party to that call (in this case, the victim's mother) has given consent. Thus, this activity did not result from a statutory violation or a Fourth Amendment violation. *See State v. Haynes*, 11th Dist. Ashtabula No.2012–A–0032, 2013–Ohio–2401, at ¶ 46; *State v. Hennis*, 2nd Dist. Clark No. Civ.A.2003CA21, 2005–Ohio–51, at ¶ 20.

*State v. Keeley*, 2014 WL 800488, at *3.  Again, the evidence about which Petitioner complains was admissible under Ohio law and Petitioner has failed to establish the denial of the effective assistance of appellate counsel on this basis.

In view of the foregoing, Petitioner has likewise failed to establish that his attorney performed in a constitutionally ineffective manner by failing to raise on appeal a claim of denial of the effective assistance of trial counsel, based on his attorney's failure to object to such issues. Moreover, Petitioner's claim of denial of the effective assistance of trial counsel is without record support.

In short, Petitioner has failed to establish cause and prejudice for his procedural defaults.

Beyond the four-part *Maupin* analysis, this Court is required to consider whether this is "an extraordinary case, where a constitutional violation has probably resulted in the conviction of

one who is actually innocent." *Murray v. Carrier*, 477 U.S. at 491; *see also Sawyer v. Whitley*, 505 U.S. 333 (1992). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623.

> The United States Supreme Court has held that if a habeas petitioner "presents evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error, the petitioner should be allowed to pass through the gateway and argue the merits of his underlying claims." *Schlup*, 513 U.S. at 316, 115 S.Ct. 851, 130 L.Ed.2d 808. Thus, the threshold inquiry is whether "new facts raise[ ] sufficient doubt about [the petitioner's] guilt to undermine confidence in the result of the trial." *Id.* at 317, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 327, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court has noted that "actual innocence means factual innocence, not mere legal insufficiency." *Bousley v. United States,* 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup,* 513 U.S. at 324, 115 S.Ct. 851, 130 L.Ed.2d 808. The Court counseled however, that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.' " *Id.* at 321, 513 U.S. 298, 115 S.Ct. 851, 130 L.Ed.2d 808.

*Souter v. Jones*, 395 F.3d 577, 589–90 (6th Cir. 2005).

The record does not establish that Petitioner is the victim of a manifest miscarriage of justice. The state court of appeals recited evidence of petitioner's guilt, which was apparently enough to persuade a jury beyond a reasonable doubt that he was guilty, and he has offered no proof of his innocence. Denial of guilt is hardly an extraordinary event in a criminal case, and that bare denial is not enough to satisfy the exacting inquiry needed to excuse a procedural default. *Cf. Schlup v. Delo*, 513 U.S. at 324 (a finding of actual innocence requires the petitioner

to present evidence which undermines the Court's confidence in the jury's finding of guilt). There is no such evidence here.

## Recommended Disposition

Therefore, the Magistrate Judge **RECOMMENDS** that this action be **DISMISSED.**

## Procedure on Objections

If any party objects to this *Report and Recommendation*, that party may, within fourteen (14) days of the date of this report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1).

The parties are specifically advised that failure to object to the *Report and Recommendati*on will result in a waiver of the right to have the district judge review the *Report and Recommendation de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the *Report and Recommendation. See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

32

The parties are further advised that, if they intend to file an appeal of any adverse if they intend to file an appeal of any adverse decision, they may submit arguments in any objections filed, regarding whether a certificate of appealability should issue.

                                 *s/ Norah McCann King*
                                 Norah McCann King
                                 United States Magistrate Judge
                                 August 24, 2016